**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| KENWOOD REALTY LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHANGE HEALTHCARE SOLUTIONS, LLC<br><br>Defendant. | C.A. No. 1:24-CV-00367-MSM |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

Can a commercial landlord recover from a former tenant the costs of repairs required by the lease, where the landlord sells the property to a third party without having made those repairs? This is the question at the heart of this breach of contract action by the plaintiff, commercial lessor Kenwood Realty LLC ("Kenwood"), against the defendant, Change Healthcare Solutions, LLC ("Change"), the guarantor for Kenwood's former tenant.

For the reasons that follow, the Court holds that Kenwood is not entitled to recover the cost of repairs that Kenwood has not and will never incur and GRANTS Change's Motion for Summary Judgment.

## I. BACKGROUND

Most of the relevant facts in this case are not in dispute and, unless otherwise stated, are drawn from the complaint. (ECF No. 1.) In January 2013, Kenwood (as

Lessor) entered into a ten-year lease with American Medical Alert Corp. (as Lessee), for the premises at 100 Freight Street in Pawtucket, Rhode Island. ECF No. 1 at ¶¶5-8. The Lessee later assigned the lease to an affiliate of Change's—HCI Acquisition Corp. *Id.* at ¶¶ 15-18. In September 2019, Change executed a Guaranty by which it guaranteed the obligations of the Lessee (including the assignee of the lease, HCI Acquisition Corp.) to Kenwood. *Id.* at ¶19. In March 2024, Kenwood agreed to sell the premises (together with several nearby parcels) to the City of Pawtucket for $14.8 million. Statement of Undisputed Facts (ECF No. 18) at ¶15. This conveyance included the fixtures and furniture then-present in the building. *See* ECF 20-5 (Resolution of the City Council of Pawtucket indicating that the Purchase & Sale contract language provided for the conveyance of "the Property" and "fixtures and any furniture, furnishings, and other personal property of the Seller at or on the Property").

On August 16, 2024, Kenwood sued Change in state court, claiming that the former tenants of 100 Freight Street failed to maintain the property in good condition as required by the lease, and seeking $2.7 million in repair costs laid out in a "Facility Assessment, Repair and Replacement Cost Estimate" (the "R&R Cost Estimate") prepared by Kenwood's damages expert. ECF 18 at ¶¶ 1, 3, 11. Kenwood admitted in discovery that the repair and replacement work described in the R&R Cost Estimate "hasn't been done," and the expense will never be incurred because Kenwood has sold the building. *Id.* at ¶13. Kenwood further confirmed in discovery that all of the damages it sought (excluding attorneys' fees and costs) were contained

within that cost estimate. *Id.* at ¶11.

After discovery, Change sought summary judgment based on Kenwood's failure to incur any of the repair costs set out in the R&R Cost Estimate prior to its sale of the property to the City of Pawtucket. Change argues that since Kenwood has now sold the property it will never incur those costs and cannot prove the damages needed to sustain its breach of contract claim.

Kenwood objects primarily to Changes' contention that Kenwood needs to have incurred the repair costs in order to be entitled to compensation under the lease and argues in the alternative that there remain disputed questions of material fact regarding damages sufficient to defeat summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party," and a fact is material "if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). But "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The evidence of the non-movant"—here Kenwood—"is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255. Summary judgment is permissible, however, against a party who "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Doe v. Ord. of St. Benedict in Portsmouth, Rhode Island*, 717 F. Supp. 3d 220, 228 (D.R.I. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III. DISCUSSION

### A. Change's Potential Liability as Guarantor

A guarantor is only liable to the guarantee if the guarantee has a valid claim against the principal. *Rhode Island Hosp. Tr. Nat. Bank v. Ohio Cas. Ins. Co.*, 789 F.2d 74, 79 (1st Cir. 1986). In other words, Change, as the tenants' guarantor, is only liable to Kenwood if and to the extent that the tenants would be liable for breaches of the lease.

Change does not dispute that it is bound by the guarantee contract and only disputes that Kenwood has sufficiently proved the elements of its breach of contract claim. Accordingly, the Court assesses the merits of Kenwood's underlying claim for breach of the lease.

### B. Breach of Contract

Both the lease and the guarantee contracts provide for the application of Rhode Island Law. Under Rhode Island law, a breach-of-contract claim requires the plaintiff to "prove both the existence and breach of a contract, and that the defendant's breach thereof cause the plaintiff's damages." *Nissensohn v. CharterCARE Home Health Servs.*, 306 A.3d 1026, 1037–38 (R.I. 2024) (quoting *Fogarty v. Palumbo*, 163 A.3d 526, 541 (R.I. 2017)). Actual damages are necessary to sustain the claim. *Leone v.*

*Nationstar Mortg., LLC*, 698 F. Supp. 3d 242, 246, fn. 1 (D.R.I. 2023) (citing *Petrarca v. Fid. & Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005)).

Rhode Island law also requires that "the amount of damages sustained from a breach of contract … be proven with a reasonable degree of certainty. The plaintiff must establish reasonably precise figures and cannot rely upon speculation." *Sea Fare's Am. Café, Inc. v. Brick Mkt. Place Assocs.*, 787 A.2d 472, 478 (R.I. 2001) (internal citation omitted). "However, '[p]laintiffs will not be denied recovery merely because the damages … are difficult to ascertain, as long as they prove damages with reasonable certainty.'" *Id.* The appropriate measure of damages in a breach of contract case is the "measures of damage as will serve to put the injured party as close as is reasonably possible to the position he would have been in had the contract been fully performed." *George v. George F. Berkander, Inc.*, 169 A.2d 370, 372 (R.I. 1961).

In the realty context, contract damages generally take one of two forms: where the damage is temporary the cost of repair measure is usually appropriate, and where the damage is permanent, damages can be measured by the diminution in value of the property. *Tortolano v. DiFilippo*, 349 A.2d 48, 52 (R.I. 1975). Kenwood only sought damages under the cost-of-repair theory, as set forth in the R&R Cost Estimate and confirmed by Kenwood's 30(b)(6) witness, manager Kenneth Zuckerman. (ECF No. 15-5 at 28.)

**1. Kenwood Cannot Recover the Cost of Repairs It Has Not and Will Never Incur.**

Rhode Island caselaw in which landlords seek payment for repairs they do not

intend to make on property they no longer own is sparse, but the Seventh Circuit's decision in *Bowes v. Saks & Co.*, 397 F.2d 113 (7th Cir. 1968), is instructive. In *Bowes*, a landlord sued a former tenant for breach of a lease provision requiring the tenant to deliver the premises "in good order" and "as near to its original condition as practical." *Id.* at 114. The tenant conceded that it had not restored the building as the lease required. *Id.* But the landlord sold the building without having made the repairs. *Id.* at 117. The court held that in such circumstances the landlord "cannot claim as damages the out-of-pocket expenditures required to perform the restoration" as "[n]o such expenditures have occurred" and "no such expenses will occur." *Id.* Having sold the building, the landlord retained "no present or future interest in it." *Id.* The landlord cannot recover damages when a tenant has failed to perform a repair or restoration that provides no value to them. *Id.* at 119.

This Court is convinced that the same reasoning applies here. Having elected to only sue under a cost of repair theory and having conceded that Kenwood did not incur any of the expenses contained within the R&R Cost Estimate, Kenwood cannot prove its damages. *See Sea Fare's Am. Café, Inc.*, 787 A.2d at 478.

The cases that Kenwood cited in opposition to the Defendant's motion do not change this analysis. Kenwood cites *Sophie F. Bronowiski Mulligan Irrevocable Trust v. Bridges*, 44 A.3d 116, 121 (R.I. 2012), for the proposition that any time a lease provides that the tenant agrees to restore the property to the same condition that the premises was in prior to the lease term, a plaintiff is entitled to obtain cost of repair damages. (ECF No. 19 at 4). But in that case, the plaintiff-landlord owned

the subject property throughout the litigation and appeal. *See Sophie F. Bronowiski* 44 A.3d at 118 ("The plaintiff is the owner of a historic home…"). An expert witness testified to repairs that would be necessary because of damage that the tenant caused and associated costs that the plaintiff would actually incur. *Id.* at 119. Likewise, while Kenwood is correct that in *Tortolano v. DiFilippo* the Rhode Island Supreme Court held that repair damages may be based "on an estimated cost of repair if such opinion is expressed by a qualified expert," in that case the plaintiff continued to own the subject property through the appeal. 349 A.2d 48, 52 (R.I. 1975). There was no suggestion in *Sophie F. Bronowiski* or in *Tortolano* that the plaintiffs in either case would not actually make the repairs.

While courts do not police parties' use of monetary awards post-judgment, that principle presupposes a proven loss, and contract damages are meant to remedy harm, not provide parties with a windfall. Accordingly, insofar as Kenwood seeks to recover based on repair estimates set out in the R&R Cost Estimate but never actually incurred, Kenwood's claim fails.

**2. Kenwood's Other Arguments Raised for the First Time in Opposition to a Motion for Summary Judgment are Waived.**

In response to Change's Motion for Summary Judgment, Kenwood raised three new arguments: first, that Change is liable for damages for theft of furniture from the premises; second that Kenwood was harmed by defendant's "failure to maintain workstations"; and lastly that Change is liable for other repairs that Kenwood actually made. As these legal theories were raised for the first time in opposition to summary judgment, they have been waived. In any case, the first two arguments

also fail on the merits.

A litigant may not raise a theory for the first time in opposition to a summary judgment motion. *Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 59 (1st Cir. 2021). Allowing such a strategy is unfairly prejudicial to defendants who have focused their discovery efforts on the theories actually pled. *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 76 (1st Cir. 2016). At the 30(b)(6) deposition, Kenwood's manager testified that "all of the damages that [Kenwood] seeks in the lawsuit [are] encompassed within [the R&R Cost Estimate]." (ECF 15-5 at 28.) Kenwood thus waived costs not included in that estimate, as well as "diminution in value" damages associated with Kenwood's sale of the property to the City of Pawtucket.

Kenwood's "stolen furniture argument" also suffers from a lack of non-speculative damages. The manager was unable to identify the value of the property that they allege tenants removed from the building. Even if Kenwood had identified such damages, the sale of the building to the City of Pawtucket conveyed "fixtures and any furniture, furnishings and other personal property of the Seller at or on the Property." (ECF 20-5.) So, it is hard to see how Kenwood could establish any damages based on theft of furniture included in the sale to the City of Pawtucket. The same is true for Kenwood's claim regarding tenants' "failure to maintain workstations." Not only did Kenwood fail to substantiate what those damages might be, but Kenwood sold the workstations to Pawtucket as-is and failed to show how it was harmed by the allegedly sub-standard condition of the workstations.

Kenwood's argument for damages resulting from repairs it *actually made* is its

strongest in the abstract, but in addition to having been procedurally waived, this claim also suffers from the absence of specificity. Kenwood's Rule 30(b)(6) testimony confirms that the repairs Kenwood is alleged to have made after the lease termination are not part of the R&R Cost Estimate, and Kenwood's manager was unable to testify as to actual costs for those repairs.[1] Accordingly, this argument, too, fails.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Change's Motion for Summary Judgment (ECF No. 15).

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge

October 8, 2026

[1] *See* ECF No. 15-5 at 22 (Zuckerman testifying that he had "no idea" what post-termination plumbing repairs cost); *id.* at 36 (Zuckerman admitting that he had "no idea" what it cost for Verizon to install new fiber optic line and restore service to elevator); *id.* at 54 (Zuckerman testifying that alleged repairs to security and CCTV system were something "we kind of pieced [] together ourselves"); *id.* at 87 (Zuckerman testifying that he did not know the cost of any electrical work done after lease termination).